UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CARPENTERS' DISTRICT COUNCIL<br>OF GREATER ST. LOUIS<br>AND VICINITY, et al., | )<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | )   No. 4:08CV215RWS<br>) |
| J & J CARPENTER<br>CONTRACTORS, LLC, | )<br>)<br>) |
| Defendant. | ) |

## **MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiffs' motion for a creditor's bill in equity and to pierce the corporate veil of J & J Carpenter Contractors, LLC and J & J Carpentry, LLC. Plaintiffs wish to reach the assets of Jeff Allen and Misty Allen in order to satisfy a default judgment against J & J Carpenter Contractors. For the reasons stated below, I will deny Plaintiffs' motion.

*Background*

J &J Carpenter Contractors, LLC was a Missouri corporation that performed construction services. Jeff Allen was its owner. On May 19, 2008, this Court entered default judgment against J & J Carpenter Contractors in the amount of $151,568.46 for delinquent contributions, liquidated damages, interest,

attorneys' fees and costs owed to Plaintiffs under collective bargaining agreements and pursuant to the Employment Retirement Income Security Act (ERISA), 29 U.S.C. § 1132. On June 9, 2008, a Writ of Garnishment was issued upon the assets of J & J Carpenter Contractors by serving Garnishee UMB Bank. On July 22, 2008, $11,609.94 was received from Garnishee UMB Bank for garnishments on behalf of J & J Carpenter Contractors. J & J Carpenter Contractors went out of business on July 31, 2008. On October 6, 2008, the Court issued a second Writ of Garnishment upon the assets of J & J Carpenter Contractors by serving Garnishee UMB Bank. On November 7, 2008, Garnishee UMB Bank responded to Garnishment Interrogatories, stating that J & J Carpenter Contractors had closed its account with UMB Bank on August 7, 2008.

On June 23, 2008, Misty Allen, wife of Jeff Allen, organized a second company: J & J Carpentry, LLC. Before the formation of J & J Carpentry, Jeff Allen sometimes referred to J & J Carpenter Contractors as J & J Carpentry. Both J & J Carpenter Contractors and J & J Carpentry engaged in the same business activity and had employed some of the same persons. Jeff Allen testified that he considered himself an employee of J & J Carpentry, but he did not take any money and did not have anything to do with the day-to-day operations of J & J Carpentry. Jeff Allen also testified that he had, in the past, made collection efforts on behalf

of J & J Carpentry. Jeff Allen stated that there were some tools that he, as owner of J & J Carpenter Contractors, had donated to J & J Carpentry, but he also testified that he was the owner of some of the tools used because the "business very rarely purchased any tools."

Because Plaintiffs established that J & J Carpenter Contractors was the alter ego of J & J Carpentry, had used its control over J & J Carpentry, and stripped itself of assets to avoid paying Plaintiffs, on April 29, 2009, the Court pierced the corporate veil to allow Plaintiffs to collect the judgment against J & J Carpenter Contractors from J & J Carpentry. The Court also granted Plaintiffs a creditor's bill in equity in order to satisfy the judgment from the assets of J & J Carpentry.

On September 24, 2009, this Court issued a Writ of Garnishment upon the assets of J & J Carpentry by serving Garnishee Bank of America. On December 8, 2009, Garnishee Bank of America responded to Garnishment Interrogatories, stating that J & J Carpenter Contractors and/or J & J Carpentry had closed its account with Bank of America. During Plaintiffs' collections efforts, Magistrate Judge Mary Ann Medler ordered Misty Allen to submit to a deposition and to produce documents pertaining to those collection efforts, and Plaintiffs moved to hold Misty Allen in contempt for her repeated failures to comply with Judge

Medler's order. Misty Allen eventually submitted to a deposition on March 18, 2010.

Misty Allen testified that her "name was on" J & J Carpentry, but she did not "have any idea about this stuff." Misty Allen explained that her husband asked her to put the business in her name, but she did not perform any duties, aside from being an owner of J & J Carpentry. "I'm just going to be honest with you, sir, my husband came to me and just wanted me to sign a piece of paper, and I did, so I don't know anything about money, or owing money, or anything." She was not familiar with the duties her husband performed for J & J Carpentry, but he did not have an ownership interest because "it was in [her] name, so that was [her] business."

Misty Allen testified that her husband told other employees of J & J Carpentry what to do, hired and fired employees, procured work for J & J Carpentry, pursued collections on behalf of J & J Carpentry, and signed checks on behalf of J & J Carpentry. But when asked for specifics about her husband's involvement in J & J Carpentry, Misty Allen said, "I mean, not really much. I mean, like I said, the business has been pretty much shut down for a while, and—I mean, I don't know. My husband's not here. I don't know. I don't know what I'm—I really don't know anything."

To the best of Misty Allen's knowledge, Jim Cornet ran J & J Carpentry, but she was not able to provide Mr. Cornet's address. J & J Carpentry had done some work within the last year, and Mr. Cornet mainly "just collects money." J & J Carpentry had accounts receivable within the last year, but it no longer has any accounts receivable. Misty Allen testified that J & J Carpentry does own some tools or equipment, but she has "no idea where they are, or what they are." Misty Allen also testified that J & J Carpentry went out of business in or around February 2010.

***Discussion***

Plaintiffs argue that the Court should pierce the corporate veil of J & J Carpenter Contractors and J & J Carpentry and permit them to satisfy the judgment "from their alter egos, Jeff Allen and Misty Allen." Neither Jeff Allen nor Misty Allen responded to Plaintiffs' motion.

Federal courts have "the same authority to aid judgment creditors in supplementary proceedings as that which is provided to state courts under local law." H.H. Robertson Co. v. V.S. DiCarlo Gen. Contractors, Inc., 994 F.2d 476, 477 (8th Cir. 1993). The Eighth Circuit has "recognized the availability of the creditor's bill in equity under Missouri law." Id. "A creditor's bill is considered the equitable equivalent of garnishment on execution and is comparable to

proceedings supplementary to and in aid of execution." Shockley v. Harry Sander Realty Co., Inc., 771 S.W.2d 922, 925 (Mo. Ct. App. 1989) (citing United States ex rel. Goldman v. Meredith, 596 F.2d 1353, 1357 (8th Cir. 1979). Under Missouri law, a creditor's bill in equity "enables a judgment creditor to trace the value of the goods and services rendered to an empty-shell corporation to the parties behind such a corporation who have received and benefitted from the property or services." H.H. Robertson Co., 994 F.2d at 477. The Missouri alter ego standard applies to such claims. Id.

A party may hold an individual personally liable for what are deemed vicarious acts of the corporation by piercing the corporate veil. Dwyer v. ING Inv. Co., Inc., 889 S.W.2d 902, 904 (Mo. Ct. App. 1994). To pierce the corporate veil under Missouri law and recover from the assets of an alter ego, a creditor must demonstrate three things. First, the creditor must prove the person from whom it seeks to recover the judgment is the alter ego of the defendant. Mobius Mgmt. Sys., Inc. v. West Physician Search, L.L.C., 175 S.W.3d 186, 188 (Mo. Ct. App. 2005). To do so, the creditor must show "control" of the entity's finances, policy, and business practices with respect to the transaction at issue. Id. The necessary control is not "mere majority or stock control, but complete domination, not only of finances, but of policy and business practice with respect to the transaction,

such that the corporate entity had no separate mind, will or existence of its own." Id. Second, the creditor must show that the defendant's used its control to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or dishonest and unjust act in contravention of plaintiff's legal rights. Id. at 188–89. Finally, the creditor must prove that the defendant's control and breach of duty was the proximate cause of the plaintiff's injury. Id.

In this case, although there is some evidence Misty Allen participated in the creation of J & J Carpentry as part of a fraudulent scheme, Plaintiffs have presented no evidence that Misty Allen was the alter ego of J & J Carpenter Contractors or J & J Carpentry or that either company lacked a "separate mind, will or existence" from that of Misty Allen. The only evidence presented by Plaintiffs shows that Misty Allen exercised no control over J & J Carpentry.

Plaintiffs produced evidence that Jeff Allen participated in the operations of J & J Carpentry, but that another individual, Jim Cornett, ran J & J Carpentry. As mentioned above, to prevail on their motion, Plaintiffs must show that J & J Carpenter Contractors and J & J Carpentry lacked a "separate mind, will or existence" from that of Jeff Allen. In this case, I believe all parties would benefit from discovery on the issues raised in Plaintiffs' motion.

Although a creditor's bill can be brought by motion in the underlying lawsuit where judgment was originally obtained, it is also appropriate to bring it in a separate equitable action.  Cf.  Fleming Companies, Inc. v. Rich, 978 F. Supp. 1281, 1294 (E.D. Mo. 1997).  Because Plaintiffs have not established they are entitled to relief as to Misty Allen, and the necessary discovery as to the role of Jeff Allen should be conducted in a new and separate lawsuit, I will deny their motion.

Accordingly,

**IT IS HEREBY ORDERED** that Carpenters' District Council of Greater St. Louis and Vicinity, et al's motion for a creditor's bill in equity and to pierce the corporate veil of J & J Carpentry, LLC, the alter ego of Defendant J & J Carpenter Contractors, LLC  [#79] is **DENIED.**

Dated this 9th Day of June, 2010.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE